Filed 5/25/21  P. v. Fletcher CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RONALD FLETCHER,<br><br>        Defendant and Appellant. | A160656<br><br><br>(Alameda County Super. Ct. No. 87768) |

Ronald Fletcher appeals from the trial court's denial of his petition for resentencing under Penal Code section 1170.95.[1]  Section 1170.95 provides for resentencing of individuals convicted of murder under a felony murder or natural and probable consequences theory if they could no longer be convicted of murder under January 1, 2019 amendments to the Penal Code.  We reverse.  Because the record is incomplete and does not negate the possibility that Fletcher is eligible for resentencing, the trial court erred in summarily denying Fletcher's petition.

---

[1] All undesignated statutory references are to the Penal Code.

BACKGROUND

## A.

To be convicted of murder, a jury must ordinarily find that the defendant acted with the requisite mental state, known as " 'malice aforethought.' " (*People v. Chun* (2009) 45 Cal.4th 1172, 1181 (*Chun*), quoting section 187, subdivision (a).) Until recently, the felony murder rule provided an exception that made "a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*Id* at p. 1182.) Under a separate rule known as the natural and probable consequences doctrine, a " ' "person who knowingly aids and abets [the] criminal conduct [of another person] is guilty of not only the intended crime . . . but also of any other crime the [other person] actually commits . . . that is a natural and probable consequence of the intended crime.' " ' (*People v. Chiu* (2014) 59 Cal.4th 155, 161.)

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective January 1, 2019, raised the level of culpability required for murder liability to be imposed under these theories. (See Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended section 189, which defines the degrees of murder, to limit murder liability based on felony murder or a natural and probable consequences theory for a person who: (1) was the actual killer; (2) though not the actual killer, acted "with the intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder; or (3) was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); *People v. Verdugo*

2

(2020) 44 Cal.App.5th 320, 326 (*Verdugo*), review granted Mar. 18, 2020, S260493.)  Senate Bill No. 1437 also amended the definition of malice in Penal Code section 188 to provide that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *Verdugo, supra*, 44 Cal.App.5th at p. 326.)

Finally, the bill added section 1170.95, which provides that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts."  (§ 1170.95, subd. (a).)  The individual may file a petition if three conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).) Under subdivision (b), the petition must include a declaration that the petitioner is eligible for relief based on the requirements set forth in subdivision (a); the superior court case number and year of the conviction; and whether the petitioner requests the appointment of counsel.  (§ 1170.95, subd. (b)(1).)

3

## B.

In the instant appeal, we granted Fletcher's request that we take judicial notice of this division's 1991 opinion in his direct appeal. (See *People v. Fletcher* (Aug. 21, 1991, A050373 [nonpub. opn.] .) As background, we briefly summarize the facts described in that opinion. According to the opinion, a jury convicted Fletcher of second degree murder (§ 187) and found that he personally used a firearm in the commission of the crime (§ 12022.5).

At the time the victim was killed, Fletcher was a passenger in a car driven by an individual named Larry Parker. Parker, a former associate of the victim's, had fallen out with the victim. The victim was standing outside his mother's house when Parker drove up in his car. The victim died after shots were fired from Parker's car.

According to some witnesses, the passenger in Parker's car extended his hand out the open window of the car and opened fire several times. The victim's sister testified that she noticed a burn or a rash on the gunman's right hand. Fletcher had a scar on his right hand, but Parker did not.

The prosecution also introduced evidence that Fletcher had admitted to one witness that "he fired into a crowd but said he did not know if he hit anyone." Fletcher stated on another occasion that he fired into a crowd that included the victim.

However, a defense witness, Willie Lige, testified that it was the driver (Parker) who leaned across the passenger and fired the shots.

## C.

Fletcher's resentencing petition declared that, in his prosecution for murder, the charging document allowed the prosecution to proceed

4

under a felony murder theory or the natural and probable consequences doctrine; in 1989, he was convicted of second degree murder based on the natural and probable consequences doctrine; and he could not now be convicted of murder because of the 2019 amendments to sections 188 and 189. Fletcher also declared that he was not the person who actually killed the victim and he did not aid and abet the actual killer in the commission of first degree murder. In addition, he sought a hearing and requested that the trial court appoint counsel to assist him in his resentencing petition.

Fletcher's petition attached over 300 pages of additional material, including reporter's transcript pages reflecting some but not all of the jury instructions, the jury's verdict, and excerpts of testimony by Lige and the victim's sister .

The trial court denied the petition based on facts described in the court of appeal opinion affirming Fletcher's conviction. (*People v. Fletcher* (Aug. 21, 1991, A050373 [nonpub. opn.].) The court concluded that Fletcher was ineligible for resentencing because "he was found to be the actual killer."

## DISCUSSION

Applying a de novo standard of review, we conclude that the trial court erred in summarily denying Fletcher's resentencing petition. (See, e.g., *People v. Drayton* (2020) 47 Cal.App.5th 965, 981 [reviewing de novo the trial court's summary dismissal of a section 1170.95 petition].)

## A.

Fletcher contends the trial court was required to accept at face value his statement that he could not be convicted of first or second

5

degree murder because of the amendments made by Senate Bill No. 1437, and he asserts that the court erred in considering the previous decision of this court affirming his conviction. Our Supreme Court has granted review on this issue. (*People v. Lewis*, review granted Mar. 18, 2020, S260598.) We conclude that the trial court was not required to accept Fletcher's statements at face value.

After a trial court determines a petition is facially sufficient (see § 1170.95, subd. (b)(2)), the court "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c); *Verdugo*, *supra*, 44 Cal.App.5th at pp. 328-329.) The court's role at this stage is "to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329.) Information from the record of conviction (including the charging documents, jury instructions, and verdict forms) could conclusively establish ineligibility, such as in cases in which the individual was not prosecuted under a felony murder or natural and probable consequences theory or was not convicted for first or second degree murder. (See § 1170.95, subd. (a)(1)-(2); *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330.) Accordingly, the trial court may consider information from the record of conviction indicating the basis of the conviction. (See, e.g., *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1138 (*Lewis*), review granted Mar. 18, 2020, S260598; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-674 (*Edwards*), review granted July 8, 2020, S262481.)

6

As part of that review, the trial court may consider a prior appellate opinion in the underlying criminal case as it bears on aspects of the petitioner's conviction – for example, by showing the crime for which the petitioner was convicted and that the conviction was affirmed.  (See *People v. Woodell* (1998) 17 Cal.4th 448, 456-457 (*Woodell*) [record of conviction includes not only the trial court record but also an appellate opinion, at least for nonhearsay purposes]; *Verdugo, supra*, 44 Cal.App.5th at p. 333 ["A court of appeal opinion, whether or not published, is part of the appellant's record of conviction."].)

## B.

The People assert that the trial court correctly denied Fletcher's petition under section 1170.95 because the record of conviction establishes that he personally shot and killed the victim.  We disagree. The record falls short of establishing his ineligibility as a matter of law.

## 1.

The reporter's transcript pages attached to Fletcher's petition reflect that the jury found Fletcher guilty of second degree murder "in that on or about the 17th day of May 1986, in the County of Alameda . . . [the] defendant did then and there murder" the victim "as charged in count one of the amended information."  The jury further found "that in and during the commission, attempted commission of the above offense . . . Fletcher did personally use a firearm, to wit, a handgun."  In addition, the jury found "that in and during the commission and attempt[ed] commission of the above offense . . . Fletcher did intend to inflict great bodily injury" on the victim.

7

Consistent with the appellate opinion relied upon by the trial court, the reporter's transcript pages attached to Fletcher's petition also reflected Lige's testimony that just before the victim was shot, he saw the driver of the car (Parker) extend his right hand and fire a gun from the car, and he saw the flash of the driver's gun.

Neither the record before us nor apparently the record before the trial court contains the charging document, the verdict forms, or the complete jury instructions.

**2.**

The record does not conclusively establish that Fletcher was ineligible for resentencing.

First, the incomplete record does not establish that Fletcher, rather than Parker, was the actual killer. The jury was presented with evidence that, at the time of the crime, Fletcher was riding in a car with Parker, who fired shots at the murder victim after having fallen out with him. As a result, Fletcher's case is not as cut and dry as one that involves a lone perpetrator, where the facts exclude the possibility that the defendant was convicted based on aiding and abetting a non-murder crime such as assault with a deadly weapon. For example, in *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899 (*Tarkington*), review granted Aug. 12, 2020, S263219, the court concluded that the petitioner, who was convicted of second degree murder and found to have personally used a deadly weapon in the commission of the crime, could not have been prosecuted on a natural and probable consequences theory in part because "the murder involved a single perpetrator" and "was not a situation in which multiple persons carried out the attack." (See *id.* at p. 899 [concluding that petitioner was "the actual killer"

based on the circumstances of the crime, jury instructions, and verdict form].)

Neither does the jury's finding that Fletcher "intended to inflict great bodily injury" on the victim amount to a finding that he was the actual killer. Because the record does not contain the charging documents, we cannot be certain as to the charge to which this finding pertained. Ordinarily, if a jury's verdict is unclear, we would construe the verdict in light of the parties' arguments at trial and the instructions, as well as the charging documents (*People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272-1274), but we are unable to do so given the incomplete record. Moreover, assuming the jury found not only that Fletcher intended to inflict great bodily injury but that he *did* inflict such injury on the victim, that would not necessarily have indicated the jury determined he was the actual killer. (See *In re Sergio R.* (1991) 228 Cal.App.3d 588, 601-602 ["where, as here, more than one assailant discharges a firearm into a group of people and 'it is not possible to determine which assailant inflicted which injuries,' " the defendant may be found to have inflicted great bodily injury " 'if his conduct was of a nature that it could have caused the great bodily injury suffered' "], quoting *People v. Corona* (1989) 213 Cal.App.3d 589, 594.)

Second, we do not know whether Fletcher was charged on a natural and probable consequences theory. The jury found that Fletcher murdered the victim "as charged in count one of the amended information," but, as noted, the amended information was not included in the record transmitted to us by the trial court. Fletcher's petition alleged that the charging document permitted the prosecution to

9

proceed on a felony murder theory or under the natural and probable consequences doctrine.

Third, we do not know whether the jury was instructed on felony murder or the natural and probable consequences doctrine.  The record before us does not contain a complete set of the jury instructions.  We cannot confirm the People's assertion that the jury must have convicted Fletcher of malice murder because the jury was not instructed on these other theories.

Fourth, because there was evidence of a second gunman, the jury's findings that Fletcher personally discharged a firearm in the commission of the murder under section 12022.5 and "intend[ed] to inflict great bodily injury" on the victim do not necessarily establish that the jury found that Fletcher acted with actual malice.

For example, in *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*), the court considered a section 1170.95 petition by a defendant (Offley) who, based on his participation in a shooting by multiple gang members, was convicted of second degree murder with an enhancement (under section 12022.53, subdivision (d)) for personally and intentionally discharging a firearm and proximately causing great bodily injury or death.  (*Id.* at pp. 593, 598.)  *Offley* reasoned that "[b]ecause an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought." (*Id.* at p. 598.)  The court explained that the jury may have relied on a natural and probable consequences theory and concluded that Offley "intended to take part

10

in a conspiracy to commit assault with a firearm . . . with the aim of [merely] injuring" the victim. (*Id.* at p. 599.)

Similarly here, the jury's finding under section 12022.5 did not require a finding that Fletcher acted with intent to kill or with conscious disregard to life. On the limited record before us, we are unable to rule out the possibility that the jury could have relied on Lige's testimony to conclude that Fletcher aided and abetted Parker in an assault with a deadly weapon, the natural and probable consequence of which was the victim's death. (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 329 [court must make all factual inferences in the petitioner's favor].) Fletcher's admission that he shot into a crowd falls short of admitting that he intended to kill the victim, and, indeed, the jury expressly found only that Fletcher intended great bodily injury.

As *Offley* emphasized, "[i]n many instances, additional information from the record will establish that a defendant's conviction was not based on the natural and probable consequences doctrine, and that the jury must have convicted the defendant on the basis of his own malice aforethought" – such as where the jury instructions indicate that no instruction was given on the natural and probable consequences doctrine. (*Offley*, *supra*, 48 Cal.App.5th at p. 599.) Without the benefit of such "additional information" from the record of conviction, however, the trial court erred in summarily dismissing Fletcher's petition. (See *id.* at p. 597 [in the initial review, "[t]he trial court . . . may not reject a defendant's petition unless it determines that 'the petitioner is ineligible for relief as a matter of law' "]; see also *Verdugo*, *supra*, 44 Cal.App.5th at p. 330.)

11

**C.**

Fletcher contends that the trial court erred in failing to appoint counsel to represent him prior to dismissing his section 1170.95 petition.  We reject his statutory argument, and we need not decide his constitutional argument.

Several courts have concluded that section 1170.95 does not mandate the appointment of counsel during the trial court's initial assessment to determine whether the petition has established a prima facie case that the petitioner falls within the statute.  (See, e.g., *Lewis*, *supra*, 43 Cal.App.5th at p. 1140; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332-333; see also *People v. Harris* (2021) 60 Cal.App.5th 939, 947, review granted April 28, 2021, S267802; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 (*Cornelius*), review granted Mar. 18, 2020, S260410; *Tarkington*, *supra*, 49 Cal.App.5th at pp. 899-900; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123, review granted Nov. 10, 2020, S264684 [holding that section 1170.95, subdivision (c), mandates appointment of counsel upon filing of a facially sufficient petition].)

Pending guidance from our Supreme Court, and having considered Fletcher's arguments, we are unpersuaded that the trial court is required to appoint counsel before initially determining whether the petitioner has established a prima facie case that he falls within the statute. The text and structure of section 1170.95 indicate that the requirement arises only *after* the trial court's initial determination that the petition sets forth such a prima facie case.  The first sentence of section 1170.95, subdivision (c), requires the trial court to determine whether the petitioner has made a prima facie showing; the second sentence mandates the appointment of counsel if requested;

12

and the third sentence requires the prosecutor to file and serve a response and allows the petitioner to file a reply. "The structure and grammar of this subdivision indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 332; see also *Lewis*, *supra*, 43 Cal.App.5th at p. 1140.)

This sequence makes sense given the greater role for counsel to play in responding to the prosecution's brief, which would only be necessary if the petition succeeds at the first prima facie stage. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 332.) It also conserves public resources by avoiding appointment of counsel in cases where the petitioner is ineligible for relief as a legal matter. (See *Lewis*, *supra*, 43 Cal.App.5th at p. 1138.) We agree with the analyses in *Lewis* and *Verdugo* and hold that the trial court did not violate section 1170.95 in declining to appoint counsel before concluding that Fletcher did not establish a prima facie case that he fell within the statute.

Fletcher also contends that the failure to appoint counsel violates his constitutional rights. (But see *People v. Daniel* (2020) 57 Cal.App.5th 666, 676 [holding that unless a petitioner has established a prima facie case of entitlement to relief for resentencing, "a petitioner's right to counsel under section 1170.95(c) is not protected by the federal Constitution"], review granted Feb. 24, 2021, S266336.) However, it may be unnecessary to address this constitutional question if, on remand, the trial court concludes Fletcher has established a prima facie case. We therefore remand this case to the trial court to determine

whether, considering readily available portions of the record of conviction, Fletcher is ineligible for relief as a matter of law.  (See *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted Jun. 24, 2020,  S262011.)  If portions of the record necessary to determine whether the jury may have convicted Fletcher on a natural and probable consequences doctrine – such as the charging documents and jury instructions – are not readily available to the trial court, or the court otherwise determines that Fletcher is not ineligible for resentencing as a matter of law, then he will be entitled to appointment of counsel and an opportunity for further briefing.  (§ 1170.95, subd. (c).)

**DISPOSITION**

The trial court's order is reversed.  On remand, the court shall determine, based on readily available portions of the record of conviction, whether Fletcher has made a prima facie showing that he falls within the provisions of section 1170.95.  If the court finds that Fletcher is potentially eligible for resentencing pursuant to section 1170.95, the court must appoint counsel and order briefing.

_____

BURNS, J.

We concur:

_____

NEEDHAM, ACTING P.J.

_____

RODRIGUEZ, J.*

A160656

---

\* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.